IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                                                             )<br>            Plaintiff,                       )<br>                                                             )<br>    v.                                                  )     Criminal Action No. 24-81-RGA<br>                                                             )<br>JEHOSHAPHAT MARTINEZ,       )<br>                                                             )<br>            Defendant.                  )  | |

MEMORANDUM ORDER RE: SENTENCING GUIDELINE DISPUTE

The issue is whether drugs seized from Devon Martinez on July 9, 2024, should be attributed as relevant conduct to Defendant, Jehoshaphat Martinez, who was arrested and incarcerated on June 25, 2024.

The applicable guideline is § 1B1.3(a)(1)(B), which describes relevant conduct to include,

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
>> (i)     within the scope of the jointly undertaken criminal activity,
>>
>> (ii)    in furtherance of that criminal activity, and
>>
>> (iii)   reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

The Government's claim is that Defendant and Devon Martinez were engaged in a long-running conspiracy to distribute fentanyl.

The Government relies upon various pieces of evidence to establish the conspiracy:

1

On February 2, 2024, Devon Martinez sent Defendant text messages that are reasonably interpreted as stating that Devon Martinez will be sending his drug customers to Defendant for a week while Devon Martinez is doing something else. (GX-14).

On March 21, 2024, Defendant sold to the CI bundles of purported heroin with the stamps "Rob49" and "Cheetos." (PSR ¶ 20[1]).

On April 4, 2024, Defendant sold to the CI bundles of purported heroin with the stamps "Blackout," "Cheetos," and "Nyquil." (PSR ¶ 24; GX-10).

On April 6, 2024, Defendant texted Devon Martinez noting that he and Devon Martinez are "the only ones with rob49 down here type shit so whoever u giving it to . . . ." The message shows that Defendant knows that Devon Martinez is selling the same general product as Defendant and that they are the only two selling the specific rob49 stamp "down here." (GX-13).

On May 21, 2024, Defendant sold to the CI bundles of purported heroin with the stamps "Eastern" and "Blackout." (PSR ¶ 27).

On June 1, 2024, Defendant sent a text message to his customers referring them to "lil O" [i.e., Jordyn Reed] for "punisher, blackout, and snail" while Defendant was "not . . . around." (D.I. 39 at 5).

On June 25, 2024, law enforcement seized from Defendant's apartment bundles stamped "Big Punisher," "Blackout," "Cheetos," and "Mood Cardi B." The number of bags seized was about 1860, including the ones seized from a customer who had just purchased them from Defendant, and they contained 74.3 grams of fentanyl. (PSR ¶¶ 29-30; D.I. 39 at 4).

On June 27, 2024, Defendant made phone calls from federal prison to the mother ("Tater") of his child (partly with Jordyn Reed also on the call) and then separately to his

---

[1] I refer to the version of the PSR that is at D.I. 32.

brother, Devon Martinez. The calls are pretty obviously in code, and some of the underlying messages are difficult to make out. Defendant appears to have told Tater that there was 20 thousand (either dollars or drugs worth $20,000) that was not seized, probably because it was hidden "you know where." When Reed was also on the line, it appeared that Defendant was telling him to give Tater "paper [i.e., money]" that Reed owed to Defendant. Defendant appeared to be telling Reed to "holler at" Tater when he needed some more drugs. The next call was to Devon Martinez. Defendant told him Tater "know exactly what to do and how to do it," which sounds like a statement that Tater will take Defendant's place. Defendant told Devon Martinez that law enforcement had only seized "150 joints,"[2] but that he had "over 30" that had not been seized. The parties debate whether the "over 30" refers to bundles or sticks.[3] I do not think the Government has shown by a preponderance of the evidence that the "over 30" refers to sticks.

On June 28, 2024, Defendant's sister texted Reed. The sister said that Tater is not supposed to be touching Defendant's drugs. The sister said she will get the drugs and give them to "my brother [i.e., Devon Martinez]." (PSR ¶ 33). This texting evidence seems to indicate that Tater will not be taking Defendant's place. Instead, it seems to indicate that Defendant's remaining drugs will be delivered to Devon Martinez for him to sell.

On July 9, 2024, pursuant to a search of Devon Martinez's person, vehicle, home and girlfriend, investigators seized about 3623 bags stamped "Cardi B," "Cheetos," "Kobe," "Sweet Dreams," "Pressure," "Dropper," "Rob49," "Ice Box," and "Sexxy Red," as well as 4 bags with

---

[2] Pretty clearly, the 150 joints are 150 bundles, based on the amount seized.

[3] Thirty bundles would have an approximate value of $1500-1650. Thirty sticks would have a value of about ten times that.

no stamp. (PSR ¶ 34; GX-9). The lab report (GX-9) breaks down how many of each stamp was seized.

| | |
|---|---|
| Rob49: | 15 + 31 + 29 = 75 |
| Kobe: | 2249 |
| Sweet Dreams: | 148 |
| Cheetos: | 42 + 1 = 43 |
| Dropper: | 16 |
| Pressure: | 7 |
| Cardi B: | 2 |
| Ice Box: | 4 |
| No stamp: | 4 |
| Sexxy Red: | 954 + 117 + 8 = 1079 |

There is not much actual overlap between what was seized from Devon Martinez and what had been previously obtained from Defendant. The overlap consists of Rob49, Cheetos, Pressure,[4] and Cardi B, which made up 127 of the 3627 bags attributable to Devon Martinez. The two stamps that make up the great bulk of Devon Martinez's bags (about 90%) were Kobe and Sexxy Red, neither of which is a stamp connected with Defendant. Viewing the sales from the evidence about Defendant, he sold eight different stamps. Four of them—Nyquil, Eastern, Blackout, and Big Punisher—were not in Devon Martinez's possession two weeks after Defendant's arrest. The four that Devon Martinez did possess totaled 127 bags.

Since the great bulk of the fentanyl stamps Devon Martinez had for sale on July 9th had no overlap with the fentanyl stamps Defendant had been selling, and since the conversation on June 27th between Defendant and Devon Martinez is unclear about the amount of fentanyl Defendant claimed to have had left, I cannot conclude that Defendant possessed more than 30 bundles after the seizures made pursuant to execution of the search warrant. Nor can I conclude

---

[4] No "Pressure" was obtained from Defendant, but the Pressure stamp had been discussed by Defendant in text messages with a third person, Jordyn Reed.

4

that Defendant, after his arrest, is responsible for Devon Martinez's on-going drug business.[5] I further conclude that the Government has not shown by a preponderance of the evidence that the great bulk of the drugs that Devon Martinez possessed on July 9th (the Kobe and the Sexxy Red) was within the scope of the conspiracy that Defendant discussed with Tater, Jordyn Reed, and Devon Martinez on June 27, 2024.[6] Thus, I find that the Government has not shown that I should use the weight of the fentanyl in Devon Martinez's possession on July 9th as relevant conduct.

The fentanyl seized on June 25, 2004, weighed 74.3 grams. At the hearing on May 12, 2025, the Government agreed that, at most, the three controlled buys should be considered to be 4.8 grams, 16.2 grams, and 5 grams, or 26 grams total. At the hearing, I explained why I would not count the drugs seized from Jordyn Reed. Based on the statement about "30," I would attribute another 15.6 grams of fentanyl to Defendant.[7] The total would thus be 74.3 + 4.8 + 16.2

---

[5] The drug relationship between the two brothers is unclear. They knew each other was selling heroin. But what was their relationship? It is clear that at least sporadically they helped each other out. There is no evidence about from whom they got the heroin. Did one brother supply the other? It seems clear that they had at least one source of supply in common. Did they cooperate in obtaining heroin from that source? Did they independently obtain drugs from that source?

[6] Two additional comments. One, the Government points out that both Defendant and Devon Martinez carried their drugs in a red Wawa shopping bag. (PSR ¶ 30; D.I. 39 at 4, 10, 16). The Government does not state that there is evidence it was the same red Wawa shopping bag. Two, the Government's theory attributing Devon Martinez's drugs to Defendant seems inconsistent with the explanation why the heroin is branded. In two words, brand loyalty. For brand loyalty to work, I would expect there to be a continuity in the products being offered. When Devon Martinez is arrested with almost all his heroin being two stamps the evidence does not connect to Defendant, the supposition that those stamps came from Defendant is unsupported speculation.

[7] The PSR states that the approximately 1860 bags seized on June 25th contained 74.3 grams of fentanyl. On average, based on those numbers, a bag contains .039946 grams of fentanyl. Assuming each bundle contains 13 bags, I would estimate 30 bundles to be 15.6 grams of fentanyl.

5

+ 5 + 15.6, or 115.9 grams of fentanyl.[8]  Since 40-160 grams of fentanyl has a base offense level of 24, I believe 24 is the proper base offense level in this case.  As I recall, the parties agreed at the sentencing hearing the base offense level was going to be 24 unless Devon Martinez's drugs were counted, in which case the base offense level would be 26. Since I do not count Devon Martinez's drugs, the base offense level is 24.

I request that the Probation Officer amend the PSR to reflect the rulings I made in Court and in this Memorandum Order.  A new date will be set for sentencing.

IT IS SO ORDERED this 20th day of May 2025.

_____
United States District Judge

---

[8] Since all the seized drugs that were properly analyzed contained fentanyl, I think it is more likely than not that the controlled buys and the "30" also contained fentanyl.